1731 12 Tom Hughes Desmond McDonald on behalf of themselves and others similarity situated versus the Gulf Interstate Field Services Incorporated oral argument not to exceed 15 minutes per side Mr. Birch for the plaintiff's appellants. Good morning and may it please the court my name is Rex Birch and I represent Mr. Hughes and Mr. McDonald I would like to reserve four minutes of my time for rebuttal. Payment on a day-rate basis is not and has never been payment on a salary basis for the purposes of applying the white-collar exemptions to Fair Labor Standards Act. The district court therefore erred in granting summary judgment and it did so for at least three reasons. First it misinterpreted the Sixth Circuit's precedent in Orton versus Johnny's lunch as focusing the inquiry as to whether or not someone is salary solely on the amount of pay that a person receives. Two, it disregarded the substantial evidence including plaintiff's written employment agreements, Gulf Interstate's contracts with its clients, its admissions with respect to those contracts, as well as the testimonies from both parties demonstrating that there wasn't a predetermined amount of weekly guaranteed salary at all but rather that there was a payment on a day-rate basis. And third, the district court failed to draw inferences from that evidence in plaintiff's favor for by example assuming that because there was some evidence that the payment plan was consistent with a salary even though it was also consistent with a day-rate it therefore constituted a salary. This is inconsistent with the burden of proof under the FLSA as well as the narrow scope which is to be given to the exemptions. Because there is a genuine issue of material fact with respect to whether or not the employees at issue met the salary test, summary judgment should be reversed. This panel has sat on several FLSA cases and so everyone knows that the FLSA sets forth a broad rule that requires the payment of $100,000 a week. There are, of course, exceptions. Especially if you're seeking overtime even though, as I understand it, you were being paid at a salary or a rate of in excess of $100,000 a year? That's correct, Your Honor, and not unlike Mr. Orton from the Orton versus Johnny's lunch case whose salary in that case, I believe, was $125,000 a year and that was, of course, ten years ago. It seems like a fairness problem that you seek time and a half after receiving over $100,000 a year in line with the regulations. Well, there are lots of workers who make more than $100,000 a year on the pipeline. There are pipeline welders that make more than $100,000 a year on a pipeline. I mean, that's kind of the nature of this industry. These folks work well beyond 40 hours a week. If you were to pay what Mr. Hughes, for example, would have earned on an hourly basis had he been getting overtime, it's about $28 an hour, which is not that much difference from pipeline welders or even regular welders, particularly in the oil and gas industry. And so it is true that these folks make more than the average checker at a grocery store. Is the $28 an hour that you're saying, is that without overtime, it's $28 an hour? That's with overtime. That's with overtime. Without overtime pay, it's about $31. So looking at the regulations, 541.604B, is the critical flaw, in your view, that there was not a guarantee of a minimum weekly required amount? That is certainly dispositive under 541.604B, because there was no guarantee of a weekly amount. There was only the daily. So that's disputed, whether there was a guarantee. That's true. They have put forth some people to say, despite what our contracts say, despite what the people testified to, we told them something different. And that's part of the issue here. We did not seek summary judgment in this case. We just defended summary judgment. And our argument here to the Court of Appeals is not that. . . You could, consistent with your position now, send it back and have the fact finder determine whether there was a contractual obligation to pay a minimum amount. Absolutely. If it was not clear from the contract, you could take parole evidence, I suppose, to see what the contractual obligation was. Well, the contractual obligation kills them. Because the contracts in this case say you will be paid this much per day. And there are contractual obligations with their client, which they say governs what these workers are supposed to do. We don't have to hold that it kills them in order to rule for you on this appeal. I'm sorry? We don't have to hold that it kills them in order to rule for you on this appeal. Absolutely not. All you have to do is say that, based on this evidence, there's fact issue. And that's, in fact, all we're asking you to do. I have one more question. I'm concerned about this evidence about being paid for unworked sick days and holidays. You say in your reply brief, I guess, that non-exempt employees are often paid for unworked sick days and holidays. Is there support for that in the record, or is that just something you all say? You do say that, right? We do say that, and there is support. Now I'm asking you, is that support in the record, or is that just something you're saying people know? It is something that we're saying people know. There's support in it in, for example, the Keene versus DXP case. Oh, you're just saying look at other cases where that's reflected. Right. You can certainly do that. And with respect to the sick or vacation pay, keep in mind that Gulf Interstates testimony, and this can be found at 3253 of the record, Gulf Interstates testimony is we didn't have any sick or vacation plan, and we didn't have any plan for paying for holidays. That was determined by Mark West. These inspectors worked for Gulf Interstate at the request of Mark West. And so Mark West determines, and this is a direct quote from Ms. Kramer, determines in its discretion whether or not it will pay for holidays or sick days or things like that. And what it goes to whether there's a contractual obligation or not. Right. For sure. So what would be enforceable if at some point, which doesn't appear to have happened, but hypothetically speaking they just didn't pay, they didn't have work for half a week and said nobody's coming in this week. No good reason other than we just don't have the work for you this week. And then they don't pay. Then the employees go to court and say pay us. And if they win, then in that hypothetical, then you lose because that's weekly. But if they lose, then it's not weekly and you would win this case. Yes. Okay, I got it. Yes. And Ms. Kramer, of course, testified that what she would have paid during the relevant time period is whatever was reflected on Mark West's timesheet. But you agree that the question, if we agreed with you and remanded, the question would be that question, which is what would have happened in that hypothetical situation where they just didn't have work for a few days, and then the question is whether they still owed the money or not. No. I believe that that would be a relevant question. That's not the only question. The primary question is whether or not there is a salary in the first place. All this talk of deductions, right, is something. I'm not talking about deductions. I'm talking about whether you get paid when you don't work. Right. Or in the week. If you work three days and you don't work two days, do you get paid for five days or do you get paid for three days? That seems like a question. It just may be that that never happened, but the inquiry is what would have happened. Right. If that had happened. Right. It may be that we're saying the same thing then. I think so. Because my concern with the district court's opinion, of course, is the district court's opinion says it doesn't matter as long as . . . As long as they got the pay. That can't be the question. Right. It can't be, or you're saying at least. It can't be just whether you got the money because it might have been that they never decided to take a few days off. Correct. You're saying, I take it, that you were actually paid the requisite amount to satisfy the salary-based requirement under the act, that is the $455 per day and at the rate of $100,000 or more annually. You're saying that you actually did receive that, correct? No, because under our . . . You didn't receive that? Is that what you're saying? We didn't receive it as a salary, which is the relevant inquiry, because under our arrangement we had a day rate plan. I know there's some reference in the record to Mr. Hughes' day rate being $500 an hour, for example. His day rate was, in fact, $337. A day. $337 a day. Right, and $337 is obviously less than $455. Again, a day rate is not a salary because it's not a period of at least a week, which is required under the regulations. It's by definition shorter than that. But the $455, wasn't that for a week? It is per week. He was getting $337 per day. He would get $337 per day. Mr. McDonald's day rate was also less than $455 per week. To be direct, Judge Merritt, and I want to be clear about this, if you only look at what was the amount of money that got paid to these workers, that was generally, I believe in every instance, more than $455 a week. That's what the regulation says, $455 per day and $100,000 or more in salary. The regulation absolutely does not say per day. The regulation categorically excludes a day rate, and that's clear in multiple places in the 541 regulations, including 541-705, which makes an exception for folks who work in the movie production business and allows them to be paid a day rate despite the salary basis requirements. So your red light is on.  Good morning, Your Honors, and may it please the court. My name is Jim Swartz, and I represent Gulf Interstate in this appeal. What this case is really about is whether or not the plaintiff's appellants, in this case, were paid on a salary basis. One element of the highly – these are highly compensated employees, and that's really where we start. These employees all were paid more than $100,000 a year. Were they paid on a salary basis? Yes, they were, and how do we know that? We look at the records of their pay. The salary basis requirement is defined in 602, 541-602A. The undisputed evidence in the lower court and in this record requires the question to be answered in the affirmative. Summary judgment should be affirmed for Gulf in this case. But what about 604B, which seems to require that there be a guarantee, and the crux, as I understand it, of the argument against your position is that there was no guarantee, or at least there's a fact question as to whether there was a guarantee. Well, there's two pieces to it, Your Honor. For highly compensated employees, they should be analyzed under 602. What case would say that we can ignore 604? There are two cases. One is the Anani case out of the Second Circuit, and the other is the Litz case out of the First Circuit. Okay, so nothing from the Sixth Circuit? No, Your Honor. But if we decided to the contrary,  Yes, Your Honor. And the other piece of this is plaintiffs raise this. Before you go on, I'm having trouble seeing what the difference is. If you look at 502, it says, We're saying that's different from a guarantee, is that it's not subject to reduction? That's because of the quality. Where's the language I'm looking at? So, Your Honor, in 602, Now, if you can say that's different from a guarantee, I'm willing to let you say it's different from a guarantee. But in my mind, that's pretty close to a guarantee, right? It says you must receive it even if you work fewer days. Why isn't that more or less the same as a guarantee? Well, that's a good point, Your Honor. In the discussion in the briefs in this case, you'll see that one of the things that brings equivalency to the two concepts is that the best way to assess what the predetermined amount under 602 has to be paid, the best way to assess that is the way that was used in the Orton case in the Sixth Circuit. That gets to whether you're going to look at what was actually paid as opposed to what was legally obligated. But it could be that for a period of time, it could be that they were obligated to pay even if they were just simply not called in for a few days.  And it could be that during a period of time, that hypothetical never eventuated, never occurred, right? Then you would have to ask some sort of hypothetical question. What if it had occurred? Here, it appears that it never occurred. They were always paid more than the week. The hypothetical question Your Honor is interested in was actually addressed specifically to Cathy Kramer, the deposition that Appellant's counsel referred to a moment ago. And she was asked what happens if somebody only works five days. And she said, well, they get paid their full six days. That's a fact issue, isn't it? Right. Is there anything in the written agreements anywhere that guarantees the minimum? The written agreement is only part of the agreement between the parties as to what their compensation arrangement will be. In this case, You're saying then that there's a written agreement and then there's an oral agreement? Or there's more multiple written agreements? The entire agreement between the parties regarding their compensation is similar to what the court analyzed in the ACS case in the Sixth Circuit. And that's looked at, were there any writings between the parties on the topic of compensation, the actual pay records that demonstrate what was paid from the employer to the employee, declarations that were submitted by the parties on the topic of what the compensation method was, and the testimony. So if there was a written agreement that didn't provide a guarantee, you're saying that the employer could be bound, and if sued by the employee, could be required to pay the oral agreement amount? Well, whether or not there's... Yes or no? Could you please ask the question again, Your Honor? If there is nothing in the written agreement guaranteeing a certain amount per week, are you saying that the employee could sue the employer if the employer didn't pay, and the employer would be bound to pay this amount that was sort of their oral... Whether or not they're contractually obligated to do that would depend on the contractual analysis. So the answer is no, that the employee would not be guaranteed to win that hypothetical lawsuit if he doesn't have it in writing in this written agreement. The written agreement would be part of the analysis. What else would be in the analysis? So in some cases... In some cases, you look at parole evidence, as it were. Well, potentially. But in the analysis of whether or not... I don't have any problem with you making those arguments. It's just that in the context of this case, they look like factual arguments. Well, in this case, the question becomes, what was the agreement between the parties? And for... You're saying it's not just in the words, it's in the context and in how... It's in the undisputed record in this case. Yes, Your Honor. Well, but if we don't find it undisputed, then it would be improper to have summary judgment, and we should send it back to resolve. That question, is that correct? Well, the focus for purposes... No, the focus for purposes of this case is an FLSA case, is what was the actual pay that was received? But that's the 602 question. Yes, Your Honor. So if we think 604 has meaning that's different... No, Your Honor, it's the same analysis, Your Honor. And so it's our view that this notion of predetermined... versus guarantee, those are equivalent notions. And why use different words? Because that raises the same question of why you have, in the First Circuit case and the Second Circuit case, both analyzed the issue of whether or not a highly compensated employee, who's making over $100,000 a year, should fall into that 604 rule. So it's for a different kind of employee. So you're saying 604 doesn't apply to people who are making $100,000 a year? That's correct. Where do you get that? That's based on the language of the actual regulations. I've got 604 in front of me. What in 604 tells you that it doesn't apply to people who make $100,000 a year? It just doesn't seem... I mean, logically, I understand your point, that they're talking about at one time it was 455, and now it's 913 a week. And so that's somebody who makes $50,000 or less for the 913. But I don't see it in the regulation  whether or not they're making $100,000 a year. I don't worry about a guarantee for people who make over $100,000. The whole notion of the highly compensated exemption was to start to relax some of the requirements of the Act to employees who were guaranteed a certain... who were given a certain amount of money. You used the word guaranteed. Guaranteed predetermined amount. But as long as this person was receiving $100,000, there was some... They don't get overtime. They don't get overtime. And here is exactly the type of situation that was contemplated, where you have an employer who needs to absolutely pay these employees over $100,000 a year just to recruit them into their business from all around the country. You have two separate... One regulation applies in the case of a highly compensated employee, and one does not. The highly compensated employees have the entirely different regulation. Is this what the 1st and 2nd Circuit held? Yes, Your Honor. That 604B does not apply to the highly compensated employee under... In other words, 601... Is that the number? 602.1. 601 is the governing regulation. That's what the... Yes, Your Honor. 1st and 2nd Circuits held. The analysis of the salary is properly done under 602 as opposed to 604. I'm still not seeing the difference. I'm sorry. Must receive without regard. Sounds like guarantee. How is it any different? The only way for the court to assess, just as the court here did in the Orton case, is looking at the actual terms of the compensation. You can say, oh, well, some cases only looked at one and some cases only looked at the other. And I'm just, you know, a little bit of a simpleton. I'm just looking at the words here. How are the words different? Must receive a full salary without regard to the number of days or hours. Okay? For any week, they must receive the full salary for any week without regard to the number of days or hours. You're saying that's not... is guaranteed. I don't know. I'm just not able to see the difference. Even if there is a guarantee required, even if you use this language... I'm just... But you're conceding now that it is equivalent? I think if... Yes, a guarantee and predetermined amount are equivalent terms. And in fact... Thank you. The plaintiffs in this case, the appellants in this case, were given a verbal guarantee with respect to... I understand that. I understand that.  over which regulation, which I just don't understand unless you can explain the difference. Why we should spend time trying to figure out whether it's 602 or 604 when they basically say the same thing with respect to this one issue? And I guess the reason you're trying to distinguish it is because you're trying to distinguish away some cases that deal with one of these provisions and not the other. But in terms of this issue, why can't I just say we've got to figure out whether the employee must receive the full salary without regard to the number of days worked? Which is the 602 rule, it appears to be. Your Honor, as we said in our papers, if you take that approach, the undisputed record in this case shows that they were in fact guaranteed they were given a predetermined amount... That's based in part on what they actually received. In part on what they actually received, in part the undisputed verbal guarantee that they were given by their supervisor. That's undisputed in the record. The appellants... But they make the argument, which is not silly, that if they didn't have this guarantee, they would have received the same amount. And that the hypothetical of just not working a certain number of days never occurred during that period. That's their argument, right? But that's not in the record, and it's not true. Not true is one thing, not in the record is another. Okay, it's not in the record for purposes of this case. And that's shown in a number of different ways. So, for example, there were holidays that they... We're just getting down to what... whether the evidence compels one of the factual answers to that question, as opposed to whether that factual question still has... a reasonable fact-finder could find either way. There's no dispute to that record. My understanding of Anani and Litz is that there were statements by the relevant courts in each of those cases that there was no dispute that the base weekly salary was guaranteed. And that was language from Anani. And the language from Litz was there was all project managers will be guaranteed a minimum weekly salary. And I thought one key aspect here is that Hughes and McDonald claim that their pay is calculated more frequently than weekly. They're claiming they're day-rate people as opposed to weekly-rate people. That's their argument. In the record, they confirmed in their depositions that they, at the outset, they knew they were being paid six-tenths. That was the weekly payment. But it was stated as a day rate of certain... It was... Somebody just said it earlier, $3.55 or something like that a day. That's how ultimately the salary is derived. But the salary was a weekly salary. Is there some place where there was a statement in writing, this is a weekly salary of a certain amount? And if so, what is... That's undisputed in the record in the declaration of Micah Hill. That's stated in the depositions. And we cited the specific locations in our brief from the depositions of Kathy Kramer, from Bob Sprick, and from the two plaintiffs, Hughes and McDonald, in this case. Did the district judge find that? I beg your pardon, Your Honor? Did the district judge find that? The district judge found that there was no dispute as to material fact on the salary basis. But it focused primarily on what they actually received. Yes, Your Honor. There were a whole host of other... Which, under the analysis, at least in your colloquy with me, under that analysis is not entirely determinative. Because you could, in fact, never have had days off during that week. So the fact that you always received more than the amount would tell you nothing about what would have happened if there had been days off. The record before the court, and in line with the Sixth Circuit precedent assessing how to understand whether, in fact, there was a predetermined amount to be paid, whether you call it a predetermined amount or a guarantee, is to look at what actually happened between the parties. But that's different from what I was suggesting the test should be. The test is, what if, assuming that this never happened, what would have happened if X had happened? It doesn't answer that to say X never happened. The difficulty with that test is that you start entering into hypotheticals for normal employment. That's what a guarantee is. I mean, it either guarantees something or it not. You can say, did this insurance cover a storm? And if that's determinative, regardless of whether there's a storm, you have to ask, what does it cover? The regs change to change the language to take out any... There's no requirement for a written contract or written agreement between the parties. That's in 602 and not in 604, that the removal of the written agreement occurred, right? 604 is the one with the guarantee. Yes, Your Honor. Your red light is on, so thank you very much. Thank you. Your Honors, it is simply not true that it is undisputed that Mr. Hughes and Mr. McDonald were told that there was this verbal guarantee of 610s. 610s is a well-known schedule that is worked by pipeliners. Saying that you're going to work 6 10-hour days in a week is not a guarantee of pay, any more than telling an hourly employee, hey, your typical... What's your best... He says there's no evidence that supports your position. What's the evidence that supports your position? Seems to me if there's evidence that supports your position, summary judgment isn't warranted. But that's an if. Which part, sir? That there's no guarantee of 6 days. Sure. There's no... We can look at the... Everyone assumed that all the evidence we've shown shows that you will get this 610 no matter what. And by no matter what, we're not just talking about sick pay. We're talking about there just wasn't any work for a few days. Even though that never happened, you would still get it. What's the evidence that you wouldn't still get it? There's a variety. What's the best evidence in the time that you have? I think the best evidence is found on page 3253 of the record. That's Ms. Kathy Kramer saying that the way that she was paid was determined by Mark West, not by reference to an employment contract or anything like that. I think other good evidence is found at 3241, which is a request from Blair Miller, who was at that time the number one man at Gulf Interstate. And he is asking Mark West, how will these people be paid? Is the inspector paid for days worked only, or is there a five-, six-, or seven-day minimum? Answer from Mark West, who again, Gulf Interstate admits, is directing how these people will be paid. They are paid for days worked only. This was explained to all of the inspectors coming in. And so it is simply not the case that it is undisputed as to what would have happened. So then the answer from your perspective is to say, summary judgment improperly granted, take evidence and find the answer to the question we're asking here. I believe that's right, Your Honor. So obviously in the discussion that we've had, all of us today, there is this possible view that somebody who makes over $100,000 shouldn't be getting paid overtime. What do we do with that? Do the regs intend to cover somebody who's making $100,000 a year and require overtime? Absolutely. I mean, the 541-601 exemption is merely a relaxed test for the administrative, executive, and professional exemptions. It is not a standalone exemption. That's been disproven by the Department of Labor, who gets to, under our re-robins, gets to say what this means. But you can make $150,000 a year and you're still going to get time and a half overtime. Absolutely. It doesn't make any sense. If you look at the bottom of 541-601-D, for example, it says that certain types of blue-collar employees are paid, entitled to be paid overtime, regardless of how highly paid that they are. Congress could require time and a half for everybody, couldn't it? Even the millionaires. They absolutely could. That's why Congress does things sometimes. But it's up to Congress and the people drafting the regulations. Yes, and the people drafting the regulations said, in the most recent round, by the way, that they gave an example of an inspector from the Southern District of New York, and the case begins with Z and it's escaping me right now, who was making well over $100,000 a year, that he was properly classified as non-exempt and should have been receiving overtime. I see my time has expired. Thank you all very much. Thank you both for your argument. The case will be submitted. Would the clerk call the next case?